LAWYERS FOR CLEAN WATER, INC.
Drevet Hunt (Bar No. 240487)
　　　　Email: drev@lawyersforcleanwater.com
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155

*Attorney for Plaintiff*
LOS ANGELES WATERKEEPER

*Plaintiff's Additional Counsel Listed On Next Page*

PILLSBURY WINTHROP SHAW PITTMAN LLP
Michael S. McDonough (Bar No. 193684)
　　　　Email: michael.mcdonough@pillsburylaw.com
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017
Telephone: (213) 488-7555
Facsimile: (213) 629-1033

*Attorney for Defendant*
DAVIS WIRE CORPORATION

E-FILED 6/30/17
JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit corporation,<br><br>　　　　　　Plaintiff,<br>　　vs.<br><br>DAVIS WIRE CORPORATION, a California corporation,<br><br>　　　　　Defendant. | Civil Case No. 2:16–cv–05332–PSG–JC<br><br>**[Proposed] CONSENT DECREE**<br><br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

LOS ANGELES WATERKEEPER
Arthur Pugsley (Bar No. 252200)
Melissa Kelly (Bar No. 300817)
    Email: arthur@lawaterkeeper.org
    Email: melissa@lawaterkeeper.org
120 Broadway, Suite 105
Santa Monica, California 90401
Telephone: (310) 394-6162
Facsimile: (310) 394-6178

# CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiff Los Angeles Waterkeeper ("Plaintiff" or "Waterkeeper") and Defendant Davis Wire Corporation ("Defendant" or "Davis Wire"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS,** Waterkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Santa Monica, California;

**WHEREAS,** Waterkeeper is dedicated to the preservation, protection, and defense of the inland and coastal surface and ground waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** Davis Wire Corporation ("DWC" or "Defendant") is the owner and/or operator of a wire drawing facility located at 5555 Irwindale Avenue, Irwindale, California 91706, hereinafter referred to by the Settling Parties as the "Facility";

**WHEREAS,** Waterkeeper has approximately 3,000 members who live and/or recreate in and around the Los Angeles area waterbodies receiving discharges from the Facility, including the San Gabriel River, San Gabriel River Estuary, San Pedro Bay, and the Pacific Ocean;

**WHEREAS,** discharges of storm water from the Facility to waters of the United States are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ and by Order No. 2014-0057-DWQ ("Storm Water Permit" or "Permit") and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA");

**WHEREAS,** on April 26, 2016, Waterkeeper sent Defendant, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"), and the Los Angeles Regional Water Quality Control Board ("Regional Board") a notice of intent to file suit ("Notice Letter") under Sections

505(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b). The Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the Facility;

**WHEREAS**, on July 19, 2016, Waterkeeper filed a complaint against Defendant in the United States District Court, Central District of California (Case No. 2:16–cv–05332–PSG–JC), alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the Facility ("Complaint");

**WHEREAS**, Waterkeeper alleges Defendant to be in violation of the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act with respect to the Facility;

**WHEREAS**, Defendant denies all allegations in the Notice Letter and Complaint relating to the Facility;

**WHEREAS**, Waterkeeper and Defendant have agreed that it is in the Settling Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.  The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A);

2.  Venue is appropriate in the Central District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations took place is located within this District;

3.  The Complaint states claims upon which relief may be granted pursuant to

Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

4.     Plaintiff has standing to bring this action;

5.     The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I.     OBJECTIVES

6.     It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et seq*., and to resolve those issues alleged by Waterkeeper in its Complaint. In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree and to comply with the requirements of the Storm Water Permit and all applicable provisions of the Clean Water Act at the Facility.

## II.     AGENCY REVIEW AND TERM OF CONSENT DECREE

7.     Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively "Federal Agencies") within three (3) days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to Defendant if requested. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.

8.     The term "Effective Date" as used in this Consent Decree shall mean the first business day following the expiration of the 45-day Agency review period or the date on which the Federal Agencies indicate in writing that they do not object to this Consent Decree, whichever is sooner.

9.     The Court shall retain jurisdiction over this matter for purposes of interpreting, modifying or enforcing the terms of this Consent Decree until the end of the

2017-2018 wet season (May 31, 2018) or until the approval of a Notice of Termination

("NOT"), whichever first occurs (the "Termination Date") and subject to the terms of the

dispute resolution process set forth in Section X, unless either Settling Party files and is

granted a timely motion requesting an extension of time for the court to retain jurisdiction

beyond the Termination Date, or if there is an ongoing dispute regarding Defendant's

compliance with this Consent Decree and Waterkeeper has filed, prior to the Termination

Date, a Notice of Dispute and a motion requesting the Court retain jurisdiction to resolve

the dispute.

### III.    LONG-TERM POLLUTION CONTROL AT THE FACILITY

10.    **Compliance with Storm Water Permit.** DWC shall operate the Facility in

compliance with the applicable requirements of the Permit (or the statements and

commitments of a Notice of Termination ("NOT") and associated documents certified

and submitted to the Regional Board) and the CWA.

11.    **Storm Water Pollution Control Measures.** Within thirty (30) days of the

Effective Date, Defendant shall implement the following measures to reduce and prevent

pollutants in the discharge of storm water associated with industrial activity at the

Facility:

      a.    **Sweeping**. Defendant shall operate a sweeper or vacuum on at least a

weekly basis from October 1 through May 31 that removes particulate matter from

surfaces across which sheet flow would occur or in curb and gutter structures, swale

structures, or other areas that a street sweeper can feasibly access.

      b.    **Inventory Management**. Defendant shall develop and implement a

plan to manage inventory to reduce the exposure of raw and finished products to storm

water. Specifically with regard to areas of the Facility that will be used to capture, convey

and infiltrate storm water, Defendant shall take practicable and cost–effective measures

to relocate materials stored below the high-water mark in those areas prior to predicted

rain events. Defendant shall train responsible employees involved in executing these

measures within thirty (30) days of the Effective Date.

**c.** **Maintenance of Roofs and Other Structural Sources of Pollutants:** Defendant shall conduct a corrosion assessment and implement periodic inspections for all roofs and other structural sources of pollutants (such as building siding), and shall implement corrective actions (such as measures to coat visible corrosion or to replace roofing and/or siding materials with less corrosive or non-corrosive materials) as necessary.

12. **Notice of Termination of Coverage Under the Permit.** Defendant shall file an NOT and pursue termination of coverage and authorization to discharge pollutants under the Permit. Defendant agrees to provide Plaintiff with an opportunity to review the NOT and associated documents prior to filing it, and to consider in good faith any recommended edits to the NOT and associated documents from Plaintiff, as detailed further below.

13. **Submission of Notice of Termination of Coverage Under the Permit.** Defendant shall seek termination of coverage under the Permit on the basis that storm water associated with industrial activity does not discharge to waters of the United States. The following process and requirements shall apply to the development, implementation, and request for approval of an NOT:

a. No later than September 1, 2017, Defendant shall prepare a No Discharge Technical Report to support the Facility's "No Discharge" eligibility. This No Discharge Technical Report may be comprised in whole or in part of materials Defendant prepares in support of the NOT. The No Discharge Technical Report shall be prepared and signed by a California licensed professional engineer. The No Discharge Technical Report shall demonstrate that the Facility is engineered and constructed to contain the maximum historic precipitation events (or series of events) using the precipitation data collected from the rain gauge located at the Santa Fe Dam, so that there will be no discharge of industrial storm water to waters of the United States. The No Discharge Technical Report shall include all appropriate safety factor considerations and apply all other general engineering principles, and shall include the following elements:

i.   Hydraulic calculations to quantify the volume of water that must be captured and prevented from discharging to waters of the United States from all areas at the site that generate storm water associated with industrial activity;

ii.   A technical soil permeability analysis of the portion of the Facility to be used to capture and retain all storm water associated with industrial activity generated at the Facility that demonstrates that no discharge of storm water associated with industrial activity to waters of the United States will occur because all such water will infiltrate or evaporate;

iii.   A geotechnical evaluation of the structures used to convey, capture, and retain all storm water associated with industrial activity generated at the Facility to demonstrate they are capable of serving their intended purpose of preventing all discharges of storm water associated with industrial activity to waters of the United States, and that meet applicable code standards and current state of practice;

iv.   A technical demonstration that the storm water captured and retained on-site does not discharge to groundwater with a direct hydrologic connection to waters of the United States;

v.   A technical demonstration, based at least in part on technical analysis of existing data and studies done on site, that infiltration of storm water captured and retained at the Facility will not result in the transfer of industrial constituent(s) to groundwater that would cause a measurable change in concentrations of those constituents in groundwater.

b.   Upon completion of the No Discharge Technical Report and prior to submitting it to the Regional Board, Defendant shall submit the No Discharge Technical Report and all underlying data and supporting documentation to Waterkeeper for review and comment. Waterkeeper shall provide comments to Defendant within fifteen (15) days of receipt. Defendant shall incorporate Waterkeeper's comments, or justify in writing why any comment(s) are not incorporated, within ten (15) days of receipt.  Within seven (7) days of receipt of Defendant's response to Waterkeeper's comments, Waterkeeper

shall notify Defendant of any remaining disputes with Defendant's No Discharge Technical Report. The Parties agree to work in good faith with respect to resolving any disputes with respect to the No Discharge Technical Report, and agree that the existence of any ongoing dispute shall not obligate Defendant to delay its NOT submittal to the Regional Board.

          c.    After submitting its response to Waterkeeper's comments on the No Discharge Technical Report, Defendant shall submit the No Discharge Technical Report and the application for NOT to the Regional Board for approval, and shall provide a copy of those final submittals to Waterkeeper.

14.    Until and unless the Regional Board approves an NOT for the Facility, Defendant shall continue to comply with the Permit, its SWPPP and the Storm Water Pollution Control Measures listed in Paragraph 11 above.

## IV.   SAMPLING AND MONITORING

15.    **Storm Water Discharge Sampling:** Unless and until Defendant's NOT is approved, Defendant shall continue to sample and monitor all storm water and non-storm water discharges from the Facility to waters of the United States as required by the Permit.

16.    Defendant shall analyze all stormwater samples collected at the Facility for the following parameters: Total Suspended Solids, Total Recoverable Zinc, Dissolved Zinc, Oil and Grease, Total Aluminum, Total Iron, and pH.

17.    Defendant shall use a state certified laboratory to conduct all analysis pursuant to this Consent Decree. Defendant shall select analytical test methods from the list provided in Table 2 of the Permit.

## V.   MONITORING AND REPORTING PROGRAM REVISIONS

18.    Within thirty (30) days of the Effective Date, Defendant shall revise its Monitoring and Reporting Program ("M&RP") for the Facility to incorporate all sampling, analysis, observation, and reporting requirements of this Consent Decree and the Storm Water Permit.

19.    Defendant shall submit the revised M&RP for the Facility to Waterkeeper

for review and comment. Waterkeeper shall provide comments, if any, to Defendant within thirty (30) days of receipt of the M&RP. Defendant shall incorporate Waterkeeper's comments into the M&RP, or shall justify in writing why any comment is not incorporated within fifteen (15) days of receiving comments. The Parties agree to work in good faith with respect to resolving any disputes with respect to the M&RP, and that any remaining disputes between the Parties will be finally resolved by submittal of the M&RP to the Regional Board for review of compliance with the Permit, or if (a) the dispute involves incorporation of provisions of this Consent Decree or (b) the Regional Board has not issued a decision within 30 days, by Waterkeeper's timely initiation of the dispute resolution procedures in Section X below. The parties further agree that no disputes shall be brought over the M&RP (and any ongoing disputes over the M&RP shall be withdrawn and abandoned) if and when the NOT is granted by the Regional Board. Nothing in this paragraph allowing Waterkeeper to review and comment on Defendant's M&RP is intended to allow Waterkeeper to seek to modify Defendant's obligations to implement and maintain the BMPs described in this Consent Decree or to require Defendant to implement and maintain additional BMPs that have not been negotiated and included in this Consent Decree, or to otherwise modify the terms and conditions of this Consent Decree.

## VI.    STORM WATER POLLUTION PREVENTION PLAN (SWPPP) REVISIONS

20.     Within thirty (30) days of the Effective Date, Defendant shall revise the SWPPP for the Facility to include all BMPs, sampling, analysis, observation and reporting requirements required by the Consent Decree and the Storm Water Permit.

21.     Defendant shall submit the revised SWPPP to Waterkeeper for review and comment. Waterkeeper shall provide comments, if any, to Defendant within thirty (30) days of receipt of the SWPPP. Defendant shall incorporate Waterkeeper's comments into the SWPPP, or shall justify in writing why any comment is not incorporated within fifteen (15) days of receiving comments. The Parties agree to work in good faith with

respect to resolving any disputes with respect to the SWPPP, and that any remaining disputes between the Parties will be finally resolved by submittal of the SWPPP to the Regional Board for review of compliance with the Permit, or (a) if the dispute involves incorporation of provisions of this Consent Decree, or (b) the Regional Board has not issued a decision within 30 days, by Waterkeeper's timely initiation of the dispute resolution procedures in Section X below. The parties further agree that no disputes shall be brought over the SWPPP (and any ongoing disputes over the SWPPP shall be withdrawn and abandoned) if and when the NOT is granted by the Regional Board. Nothing in this paragraph allowing Waterkeeper to review and comment on Defendant's SWPPP is intended to allow Waterkeeper to seek to modify Defendant's obligations to implement and maintain the BMPs described in this Consent Decree or to require Defendant to implement and maintain additional BMPs that have not been negotiated and included in this Consent Decree, or to otherwise modify the terms and conditions of this Consent Decree.

22. Additional SWPPP Revisions. Defendant shall revise the SWPPP for the Facility if there are any changes in the Facility's operations that require revision of the SWPPP, including, but not limited to, changes to storm water discharge point(s) or revisions and/or additions to the BMPs implemented.

23. Defendant shall submit any revised SWPPP to Waterkeeper within ten (10) days of the SWPPP revision for Waterkeeper's review and comment. Waterkeeper will provide comments, if any, to Defendant within thirty (30) days of receipt of any revised SWPPP. Defendant shall incorporate Waterkeeper's comments into any revised SWPPP, or shall justify in writing why any comment is not incorporated within thirty (30) days of receiving comments. The Parties agree to work in good faith with respect to resolving any disputes with respect to the revised SWPPP, and that any remaining disputes between the Parties will be finally resolved by submittal of the SWPPP to the Regional Board for review of compliance with the Permit, or (a) if the dispute involves incorporation of provisions of this Consent Decree, or (b) the Regional Board has not issued a decision

within 30 days, by Waterkeeper's timely initiation of the dispute resolution procedures in Section X below. The parties further agree that no disputes shall be brought over the revised SWPPP (and any ongoing disputes over the revised SWPPP shall be withdrawn and abandoned) if and when the NOT is granted by the Regional Board.

## VII.   EMPLOYEE TRAINING

24.     Within thirty (30) days of the Effective Date of this Consent Decree, Defendant shall develop and implement a training program, including any training materials needed for effective implementation of the training program, to ensure: (i) that there are a sufficient number of employees delegated to achieve compliance with the Storm Water Permit and this Consent Decree, and (ii) that these employees are properly trained to perform the required activities to achieve compliance with the Storm Water Permit and this Consent Decree ("Training Program"). At a minimum, the Training Program shall include the following:

a.     **Language**. Defendant shall conduct the Training Program in the language or languages in which all employees participating in the Training Program are fluent;

b.     **Non-Stormwater Discharges**. Defendant shall train all designated employees on the Storm Water Permit's prohibition of non-storm water discharges, so that employees know what non-storm water discharges are, that non-storm water discharges can result from improper surface washing or dust control methods, and how to detect and prevent non-storm water discharges to ensure compliance with the Permit and this Consent Decree;

c.     **BMPs**. Defendant shall train all designated employees on BMP implementation and maintenance to ensure that BMPs are implemented effectively to reduce the exposure of pollutants to storm water, to prevent the discharge of contaminated storm water, and to ensure the proper treatment of storm water at the Facility; and

d.     **Storm Water Sampling**. Defendant shall designate an adequate number of employees necessary to collect storm water samples from each discharge location as

required by the Permit and this Consent Decree. The training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

       e.  **Visual Observation Training**. Defendant shall provide training to all designated employees at the Facility regarding visual observations pursuant to this Consent Decree and the Storm Water Permit.

25.    Training shall be provided by a private consultant or a representative of Defendant who is familiar with the requirements of this Consent Decree and the Storm Water Permit. The training shall be repeated annually, or as necessary to ensure that all such employees are familiar with the requirements of this Consent Decree, the Storm Water Permit, and the Facility's SWPPP. All new designated staff shall receive this training before assuming responsibilities for implementing the Facility's SWPPP or M&RP.

26.    Defendant shall maintain training records to document compliance with this section, and shall provide Waterkeeper with a copy of these records within fourteen (14) days of receipt of a written request.

## VIII. COMPLIANCE MONITORING AND REPORTING

27.    Waterkeeper Site Inspections. Every year during the life of this Consent Decree, up to three (3) Waterkeeper representatives and/or consultants (including an attorney) may conduct one (1) Wet Season site inspection and one (1) Dry Season (June 1 – September 30) site inspection of the Facility. The site inspections shall occur during normal business hours. Waterkeeper shall provide Defendant with forty-eight (48) hours' notice (weekends and holidays excluded) prior to each Wet Season site inspection, and forty-eight (48) hours' notice (weekends and holidays excluded) prior to each Dry Season site inspection. Notice shall be provided by telephone and electronic mail, and shall state the names of all persons that Waterkeeper will bring to the inspection. Waterkeeper shall make every reasonable effort to ensure that its inspections are scheduled in such a manner as to allow DWC's compliance officer to be present at all inspections.

28.     During the site inspections, Waterkeeper and/or its representatives shall be allowed access to the Facility's SWPPP(s), M&RP, and all other monitoring records, reports, and sampling data for the Facility that are required to be uploaded to SMARTS, and shall provide physical copies if such information is not readily obtainable by Plaintiff from SMARTS. The Parties acknowledge that this information may contain business confidential and/or trade secret information, and as such, the Parties agree that all information obtained by Waterkeeper from DWC as a result of or in connection with a site inspection shall be maintained as confidential and shall not be disclosed to any third party, except that such information can be presented to the Court to enforce compliance with this Consent Decree. Site inspections will be limited to a visit of the areas exterior to the buildings on site, and will not include access to the interior of the buildings at the Facility or observation into the buildings from the exterior. DWC reserves the right to limit or further define physical site access as needed to accommodate site conditions, safety or operational concerns, or other issues.

29.     During the site inspections, Waterkeeper and/or its representatives may collect split storm water samples at the Facility. Waterkeeper and/or its representatives shall follow all sampling protocols specified in the M&RP, including, but not limited to sample preservation, chain of custody maintenance, sterile sampling techniques, prevention of cross-contamination, etc. Waterkeeper and/or its representatives shall not analyze for any constituents that DWC does not analyze for and shall adhere strictly to the analyses specified in the M&RP including, but not limited to, method numbers, quality assurance/quality control procedures, method detection limit goals and practical quantitation limit goals. Sample splits collected by Waterkeeper and/or its representatives shall be exact splits of samples collected by DWC staff and/or its representatives, in that they will be from a batch collected by one sampler, mixed thoroughly, with one aliquot from the batch taken by DWC and one aliquot from the batch taken by Waterkeeper for separate analyses. Waterkeeper and/or its representatives shall adhere to all health and safety requirements of DWC, including, but not limited to, the preparation of and

submittal of a health and safety plan for conducting the sampling activities in accordance with OSHA and Cal-OSHA regulations and DWC site-specific safety requirements. Any health and safety plan is to be submitted to DWC no later than one week prior to the site inspection during which samples are to be collected. Waterkeeper and/or its representatives shall use all personal protective equipment necessary to protect from identified and potential hazards and meet all requirements of OSHA, Cal-OSHA, and DWC. DWC reserves the right to refuse entry or the collection of samples should health and safety procedures being proposed or followed by any third party not adhere to DWC standards and all applicable codes and regulations. A certified California laboratory shall analyze any storm water samples collected by Waterkeeper. Waterkeeper shall submit the name, address, manager/contact person, and NELAPs certification for the analyses to be conducted to DWC no later than one week prior to the inspection during which sample splits are anticipated to be collected. Should Waterkeeper change laboratories, they shall submit the name, address, manager/contact person, and NELAP certifications for the analyses to be conducted to DWC no later than one week prior to the inspection during which sample splits are anticipated to be collected

     30.     During the site inspections, Waterkeeper may not take photographs or video recordings of any type while on the Facility grounds.

     31.     <u>Compliance Monitoring and Oversight</u>. Defendant shall pay a total of Fifteen Thousand Dollars ($15,000) to compensate Waterkeeper for costs and fees to be incurred for monitoring Defendant's compliance with this Consent Decree. Payment shall be made within five (5) days of the Effective Date payable to "Los Angeles Waterkeeper" and delivered via wire transfer to: Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, CA 90401.

     32.     <u>Document Provision</u>. During the life of this Consent Decree, Defendant shall notify Waterkeeper whenever Defendant has filed any compliance and monitoring data, including inspection reports, or documents related to storm water quality at the Facility on SMARTS, or submitted any such data or documents to the Regional Board, the State

Board, and/or any state or local agency, county, or municipality. Such notifications shall be provided to Waterkeeper within ten (10) days of filing on SMARTS or with the agencies, counties, and/or municipalities. In the event that Waterkeeper is unable to obtain legible copies of said documents from SMARTS, DWC shall, within ten (10) days of receiving notice from Waterkeeper of its inability to obtain said documents from SMARTS, mail paper copies or email electronic copies of such documents to Waterkeeper at the relevant notice address contained herein.

## IX. ENVIRONMENTAL PROJECT, REIMBURSEMENT OF LITIGATION FEES AND COSTS, AND STIPULATED PAYMENTS

33. <u>Environmental Project</u>. To address, mitigate, and remediate the alleged environmental harms resulting from non-compliance with the Storm Water Permit alleged in the Complaint, and without admitting any of the allegations of Plaintiff, Defendant agrees to:

    a. Develop and construct an Environmental Project at the Facility designed such that the Facility will no longer be expected to discharge any pollutants to waters of the United States. Defendant's current estimates put the costs to develop and implement the Environmental Project intended to eliminate all discharge of storm water associated with industrial activity from the Facility at six hundred and fifty thousand dollars ($650,000.00). This effort is above and beyond what is required by the Clean Water Act and the Permit. Implementation of this Environmental Project is expected to eliminate any contribution from this Facility to the mass load of toxic metals to the San Gabriel River watershed, a watershed that is impaired by metals and other constituents in several reaches downstream of the Facility. The parties believe this Environmental Project will have a positive benefit on the San Gabriel River watershed, and set an example of the pollution control efforts that all

industrial stormwater discharges in the region should strive to implement.

    b.  Support environmental project activities, in consultation with Council for Watershed Health, that will reduce or mitigate the impacts of storm water pollution from industrial activities on the Southern California Bight and its tributaries.

34.   <u>Reimbursement of Waterkeeper's Fees and Costs</u>. Defendant shall pay a total of One Hundred and Ten Thousand Dollars ($110,000) to Waterkeeper to partially reimburse Waterkeeper for its investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred as a result of investigating and preparing the lawsuit and negotiating this Consent Decree. Payment shall be made within three (3) days of the Effective Date payable to "Los Angeles Waterkeeper" and delivered via wire transfer to: Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, CA 90401.

35.   <u>Stipulated Payment</u>. The Defendant shall make a remediation payment of One Thousand Dollars ($1,000) for each missed deadline included in this Consent Decree, unless the missed deadline results from a Force Majeure Event. Payments for a missed deadline shall be made for the restoration and/or improvement of the watershed in the area affected by the Defendant's alleged discharges and shall be awarded to the Rose Foundation for Communities and the Environment. Defendant agrees to make the stipulated payment within thirty (30) days of a missed deadline. The payments shall be mailed via regular mail to the attention of Tim Little, Rose Foundation for Communities and the Environment, 1970 Broadway, Suite 600, Oakland, California 94612-2218. Defendant shall provide Waterkeeper with a copy of each such payment at the time it is made.

## X.   **DISPUTE RESOLUTION**

36.   This Court shall retain jurisdiction over this matter until the final termination date defined in paragraph 9 above for the purposes of implementing and enforcing the

terms and conditions of this Consent Decree, and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

37. <u>Meet and Confer</u>. A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Settling Parties in writing of the matter(s) in dispute and of the party's desire to resolve the dispute in good faith under this Section. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of fourteen (14) calendar days from the date of the notice. The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

38. If the Settling Parties cannot resolve a dispute by the end of the meet and confer informal negotiations described in Paragraph 36 above, DWC may invoke formal mediation by sending Waterkeeper a registered letter to that effect no more than five (5) business days after the 14-calendar-day period described in Paragraph 36. The Parties shall mutually agree on a mediator and a mediation process within fifteen (15) business days of the date of DWC's notice to Waterkeeper. DWC shall be responsible for all of the mediator's costs.

39. If the Settling Parties cannot resolve a dispute by the end of the meet and confer informal negotiations described in paragraph 36 above (or by the end of the mediation process described in Paragraph 37 above, if mediation is invoked), or if DWC fails to send Waterkeeper a registered letter invoking formal mediation and the Parties do not provide an extension to that deadline or agree to other alternative dispute resolution processes, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion prior to the Termination Date before the United States District Court for the Central District of California, which shall identify the issue in dispute. The Settling Parties agree to request an expedited hearing schedule on the motion. The filing of such motion by Waterkeeper shall extend the Termination Date

until the Court rules on the motion for extension of time to retain jurisdiction, the Court determines the dispute has been resolved and thereupon dismisses the case, or the Settling Parties file a stipulation for dismissal, whichever first occurs.

40.     <u>Enforcement Fees and Costs</u>. Litigation costs and fees incurred in conducting a meet and confer session(s) or otherwise addressing and/or resolving any dispute, including an alleged breach or a motion or proceeding before the Court to enforce the terms and conditions of this Consent Decree, may be awarded at the Court's discretion to either Party in accordance with the standard established by Section 505 of the Clean Water Act, 33 U.S.C. §§ 1365 and 1319, and case law interpreting that standard.

## XI.     <u>MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE</u>

41.     In consideration of the above, upon the Effective Date of this Consent Decree, the Parties hereby fully release, except for claims for Defendant's failure to comply with this Consent Decree and as expressly provided below, each other and their respective successors, assigns, officers, agents, employees, landlords/property owners, and all persons, firms, and corporations having an interest in them, from any and all alleged CWA violations claimed in the Complaint, up to and including the Termination Date of this Consent Decree.

42.     Nothing in this Consent Decree limits or otherwise affects Waterkeeper's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any other matter relating to Defendant.

## XII.   <u>MISCELLANEOUS PROVISIONS</u>

43.     <u>No Admission of Liability</u>. The Parties enter this Consent Decree to avoid costly and prolonged litigation.  Nothing in this Consent Decree or its implementation shall be construed as any admission to any finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it

1 may have to any alleged violations that may be raised in the future.

2     44. <u>Force Majeure.</u> Force Majeure includes any act of God, war, fire,

3 earthquake, windstorm, flood or natural catastrophe; unexpected and unintended

4 accidents not caused by DWC's or its employees' negligence; civil disturbance,

5 vandalism, sabotage or terrorism; restrain by court order or public authority or agency; or

6 action or non-action by, or inability to obtain the necessary authorizations or approvals

7 from any governmental agency. Force Majeure shall not include normal inclement

8 weather, economic hardship or inability to pay. Any party seeking to rely upon this

9 paragraph to excuse or postpone performance, shall have the burden of establishing that it

10 could not reasonably have been expected to avoid the event or circumstance, and which

11 by exercise of due diligence has been unable to overcome the failure of performance.

12 DWC shall exercise due diligence to resolve and remove any force majeure event.

13     45. <u>Construction.</u> The language in all parts of this Consent Decree shall be

14 construed according to its plain and ordinary meaning, except as to those terms defined in

15 the Storm Water Permit, the Clean Water Act, or specifically herein.

16     46. <u>Choice of Law.</u> The laws of the United States shall govern this Consent

17 Decree.

18     47. <u>Severability</u>. In the event that any provision, paragraph, section, or sentence

19 of this Consent Decree is held by a court to be unenforceable, the validity of the

20 enforceable provisions shall not be adversely affected.

21     48. <u>Correspondence</u>. Unless specifically provided for in this Consent Decree, all

22 notices required herein or any other correspondence pertaining to this Consent Decree

23 shall be sent by U.S. mail or electronic mail as follows:

24     <u>If to Plaintiff:</u>

25 Drevet Hunt

26 Lawyers for Clean Water
      Email: drev@lawyersforcleanwater.com

27 1004-A O'Reilly Avenue

28 San Francisco, California 94129

Arthur Pugsley
Melissa Kelly
Los Angeles Waterkeeper
        Email: arthur@lawaterkeeper.org
        Email: melissa@lawaterkeeper.org
120 Broadway, Suite 105
Santa Monica, California 90401

With copies to:

Bruce Reznik
Executive Director
        bruce@lawaterkeeper.org
Los Angeles Waterkeeper
120 Broadway, Suite 105
Santa Monica, California 90401


<u>If to Defendant</u>:

Michael S. McDonough
        Email: michael.mcdonough@pillsburylaw.com
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017


With copies to:

Donald E. Walther
        Email: dwalther@heico-acq.com
5600 Three First National Plaza
Chicago, Illinois 60602

Notifications of communications shall be deemed submitted three (3) business days after having been set via U.S. mail, or the day of sending notification or communication by electronic mail if submitted on a business day before 5:00 p.m. local time in the recipient's time zone (or if submitted after such time, the very next business day). Any change of address or addresses shall be communicated in the manner described above for giving notices.

49.    <u>Effect of Consent Decree</u>. Except as provided herein, Waterkeeper does not, by its consent to this Consent Decree, warrant or aver in any manner that Defendant's

compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of Defendant to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

50. <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

51. <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties. If any Settling Party wishes to modify any provision of this Consent Decree, the Settling Party must notify the other Settling Party in writing at least twenty-one (21) days prior to taking any step to implement the proposed change.

52. <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

53. <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

54. <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree and that this Consent Decree binds that party.

55. The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

56.     The Settling Parties, including any successors or assigns, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

APPROVED AS TO CONTENT

Dated:     2/27/17     _____

Bruce Reznik
Los Angeles Waterkeeper

Dated:     3/27/2017     _____

Donald E. Walther
Vice-President, Davis Wire Corp.

APPROVED AS TO FORM

Dated:     2/27/17     _____

Drevet Hunt
Lawyers for Clean Water, Inc.

Dated:     2/27/2017     _____

Michael S. McDonough
Pillsbury Winthrop Shaw Pittman LLP

**IT IS SO ORDERED.**

Date:     6/30/17     _____

Honorable Philip S. Gutierrez
United States District Court Judge
Central District of California